UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| FATMA KURT, | |
|---|---|
| Plaintiff, | Case No. 24-cv-02792-SK |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| ALEJANDRO MAYORKAS, et al., | |
| Defendants. | |
| | Regarding Docket Nos. 11, 13 |

This matter comes before the Court upon consideration of the parties' cross-motions for summary judgment. (Dkt. Nos. 11, 13.) Plaintiff Fatma Kurt ("Plaintiff"), whose asylum application has been pending for over three years, requests judicial intervention to hasten the processing of her application. (Dkt. No. 1.) Plaintiff is waiting for adjudication of her claim for asylum in a situation where there is a significant backlog that is inarguably a humanitarian and bureaucratic crisis, but it is a crisis that this Court is not well-placed to address. *See Esquivel v. Lehman*, No. 23-CV-02930-AGT, 2024 WL 2242441, at *1 (N.D. Cal. Apr. 16, 2024) ("The asylum backlog is principally a matter for Congress to confront."). Accordingly, the Court hereby DENIES Plaintiff's motion and GRANTS Defendants' motion for the reasons set forth below.

## BACKGROUND

U.S. Citizenship and Immigration Services ("USCIS"), the federal agency responsible for processing asylum applications, currently faces a backlog of over one million asylum applications. (Dkt. No. 13-1, ¶¶ 2, 34.) While USCIS has struggled to manage its caseload throughout its history, the problem escalated dramatically in 2023, when the backlog nearly doubled. (*Id.* at ¶ 34.) Numerous factors have contributed to this crisis. (Dkt. No. 13, pp. 7-9.) Most saliently, a surge of applications and border crossings by Latin American nationals significantly increased

demands on the agency in 2023. (Dkt. No. 13-1, ¶¶ 13-20, 36.) Meanwhile, Congress did not approve commensurate additional funding for asylum processing or backlog reduction. (*Id.* at ¶¶ 49-52.)

USCIS generally employs a three-tiered scheduling system. First, the agency is required to prioritize asylum applications filed by certain Afghan nationals paroled into the United States during Operation Allies Welcome. (*Id.* at ¶¶ 43-46.) Second, the agency has a "Last-In, First-Out" ("LIFO") policy, which strives to first schedule interviews for asylum seekers whose applications have been pending for 21 days or fewer. (*Id.* at ¶ 32.) At present, the agency is not able to schedule interviews for all new applicants within 21 days of filing, and those who are not scheduled within 21 days are placed into the backlog. (*Id.* at ¶ 28.) Processing this backlog is the third tier. Some asylum officers are assigned to address the backlog with a "First-In, First-Out" ("FIFO") approach. (*Id.* at ¶ 32.) An increase in litigation over unreasonable delays (such as this action) has led to the creation of an unintentional fourth tier: asylum interviews scheduled out of order to avoid litigation. (*Id.* at ¶ 60.) Between January 1 and July 9, 2024, the agency scheduled nearly 2,000 such interviews. (*Id.*)

The purpose of the LIFO policy is to disincentivize filing frivolous asylum applications. (*Id.* at ¶¶ 8-10.) Because asylum applicants can receive certain benefits, such as employment authorization, some individuals file frivolous asylum applications so that they can access applicant benefits until their applications are denied. (*Id.*) If processing times are long, filing frivolous applications promises substantial benefits. (*Id.*) Under the LIFO system, applicants are on notice that their cases will be heard quickly, and so filing a frivolous case carries little benefit. (*Id.*) USCIS re-adopted the LIFO system in 2018 and found that it was immediately successful in reducing the number of applications. (*Id.* at ¶ 26.)

In addition to its scheduling system, USCIS has implemented a streamlined system for cancellation of removal proceedings and implemented new technology in order to quicken adjudication of asylum applications. (*Id.* at ¶¶ 53-56.) Meanwhile, multiple members of congress, as well as the agency itself, have sounded alarms regarding the mounting backlog. (*See* Dkt. No. 13-4.)

Plaintiff is one of the thousands of individuals affected by the backlog. A 25-year-old of Kurdish origin, Plaintiff's asylum application has been pending for over three years. (Dkt. Nos. 1, ¶ 5; 11; 13-2, ¶ 14; 15, pp. 4.) Although Plaintiff has employment authorization, she is unable to pursue her desired career path of becoming a court interpreter without lawful permanent resident status. (Dkt No. 15, pp. 2-3, 16.) Plaintiff is pursuing further education in paralegal studies, but she is struggling to plan for her future and manage her mental health, given the uncertainty about her immigration status and related career possibilities. (Dkt. No. 11.)[1]

Plaintiff, proceeding *pro se*, filed this action on May 9, 2024, contending that this Court has authority under the Mandamus Act and the Administrative Procedures Act ("APA") to order USCIS to process her application "within a reasonable amount of time." (Dkt. No. 1.) On November 4, 2024, Plaintiff filed a motion for summary judgment. (Dkt. No. 11.) Defendants opposed the motion and filed a cross motion for summary judgment. (Dkt. No. 13.) The Court determined that the matter could be resolved without oral argument. (Dkt. No. 17.)

## ANALYSIS

**A.     Applicable Legal Standard on Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When judging the evidence at the summary judgment stage, the district court is not to make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

---

[1] Plaintiff's motion also argues that her immigration status prevents her from visiting her family outside of the country. (Dkt. No. 11.) However, Defendants' motion / opposition brief points out that asylum applicants may request "advance parole" authorization to travel internationally while their application is pending, but Plaintiff has not requested advance parole. (Dkt. No. 13, pp. 12, 17.) Plaintiff does not renew this argument in her opposition / reply brief. (Dkt. No. 15.)

3

1 of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient
2 evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby,*
3 *Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case.
4 *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of
5 persuasion at trial, that party "must either produce evidence negating an essential element of the
6 nonmoving party's claim or defense or show that the nonmoving party does not have enough
7 evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*
8 *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

9 Once the moving party meets his or her initial burden, the non-moving party must go
10 beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a
11 genuine issue for trial. *Id.* at 1103. In order to make this showing, the non-moving party must
12 "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v.*
13 *Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation and quotation marks omitted). In addition, the
14 party seeking to establish a genuine issue of material fact must take care to adequately point a
15 court to the evidence precluding summary judgment. *See Carmen v. San Francisco Unified*
16 *School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (affirming that a court is "not required to comb
17 the record to find some reason to deny a motion for summary judgment." (citation and quotation
18 marks omitted)). If the non-moving party fails to point to evidence precluding summary
19 judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

20 **B.   Analysis.**

21     **1.   Availability of Mandamus Relief.**

22 The Mandamus Act allows a district court to "compel an officer or employee of the United
23 States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.
24 "Mandamus is an extraordinary remedy and is available . . . only if: (1) the individual's claim is
25 clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed
26 as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d
27 929, 932 (9th Cir. 1998).

28 Defendants contend that the Immigration and Nationality Act ("INA") precludes a private

1  right of action to enforce timing requirements, such that Plaintiff cannot satisfy the first prong of
2  the mandamus test.  (Dkt. No. 13, pp. 18-20.)
3         The INA provides, "in the absence of exceptional circumstances, the initial interview or
4  hearing on the asylum application shall commence not later than 45 days after the date an
5  application is filed."  8 U.S.C. § 1158(d)(5)(A)(ii).  However, under the heading, "[n]o private
6  right of action," the INA further provides, "[n]othing in this subsection shall be construed to create
7  any substantive or procedural right or benefit that is legally enforceable by any party against the
8  United States or its agencies or officers or any other person."  8 U.S.C. § 1158(d)(7).  This explicit
9  disclaiming of a private right of action forecloses mandamus relief.  *Su v. Mayorkas*, 698 F. Supp.
10 3d 1168, 1176 (N.D. Cal. 2023).  Accordingly, the Court DENIES Plaintiff's motion and
11 GRANTS Defendants' motion as to Plaintiff's mandamus claim.

**2. Subject Matter Jurisdiction to Review the APA Claim.**

Defendants next argue that the unavailability of a private right of action precludes any judicial review of USCIS's delay in processing Plaintiff's application.  (Dkt. No. 13, pp. 20-21.)  However, "courts in this Circuit have repeatedly found that even if there is no private right of action to enforce the time frames set forth in 8 U.S.C. § 1158(d)(5)(A), the court may still review the agency's actions under the APA, which 'specifies that an agency shall not unreasonably delay any discrete agency action.'"  *Su*, 698 F. Supp. 3d at 1175 (quoting *Kang v. Jaddou*, No. 2:21-cv-09488-RGK-E, 2022 WL 2189634 at *2 (C.D. Cal. Apr. 25, 2022)); *see also Denisov v. Mayorkas*, No. 23-CV-06442-SI, 2024 WL 3522047, at *3-4 (N.D. Cal. July 23, 2024).  The Court therefore has jurisdiction to review whether Defendants have unreasonably delayed processing Plaintiff's application in violation of the APA.

**3. Merits of the APA Claim.**

The APA provides, "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b) (emphasis added).  Plaintiff argues that USCIS has not concluded her matter within a reasonable time; Defendants disagree.  (Dkt. Nos. 11; 13, pp. 21-30.)

When determining whether agency delay is legally unreasonable, courts apply the following six-factor test announced in *Telecomm. Rsch. and Action v. FCC* ("*TRAC*" factors):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 79-80 (D.C. Cir. 1984) (citations and quotation marks omitted); *see also Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (adopting the *TRAC* factors test).

### i.  Rule of Reason.

"The most important *TRAC* factor is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). "This factor requires that the time it takes for the agency to act is governed by a rule of reason." *Su*, 698 F. Supp. 3d at 1177 (citation and quotation marks omitted).

Defendants have convincingly explained how USCIS's system for scheduling asylum interviews is thoughtfully designed to discourage frivolous filings and manage the backlog. (Dkt. No. 13, pp. 12-17.)  Plaintiff does not dispute that the delay in USCIS processing is caused by crippling shortages in resources and geopolitical factors, not mismanagement. Courts in this Circuit have consistently found that, although certain applicants are disadvantaged by USCIS's system of prioritizing the most recently filed cases, that system is governed by a rule of reason.

6

1  *Su*, 698 F. Supp. 3d at 1177 (gathering cases).

2  While Courts within this Circuit have sometimes found that "seemingly infinite" delays are
3  "untethered from any discernable 'rule of reason,'" we have only done so for delays of five years
4  or more. *Denisov*, 2024 WL at *6 (quoting *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1072 (N.D.
5  Cal. 2014)). Plaintiff's three-year delay does not yet belong to this group of "seemingly infinite"
6  delays. Thus, the first factor favors Defendants.

### ii. Congressional Timetable.

"The second *TRAC* factor considers whether Congress has provided an indication of the speed with which it expects an agency to act." *Su*, 698 F. Supp. 3d at 1177 (citation and quotation marks omitted). Here, Congress specified that asylum interviews should be scheduled within 45 days of the application being filed absent "exceptional circumstances." 8 U.S.C. § 1158(d)(5)(A)(ii). This provision leaves USCIS with "limited discretion as to the timing of the adjudication of asylum applications under exceptional circumstances." *Su*, 698 F. Supp. 3d at 1177 (quoting *Yan v. Dir. of L.A. Asylum Off.*, No. 222CV05846ODWMRWX, 2023 WL 4053410, at *4 (C.D. Cal. June 16, 2023)). As previously discussed, USCIS currently faces exceptional circumstances: an unprecedented number of applications without commensurate staffing to adjudicate them. Therefore, "this factor is neutral or, at best, slightly favors the applicant." *Dawod v. Garland*, No. CV233211MWFMRWX, 2023 WL 8168832, at *4 (C.D. Cal. Oct. 12, 2023).

### iii. Human Health and Welfare, and Nature of Interests.

Courts routinely analyze the third and fifth *TRAC* factors together. *See Indep. Mining Co.*, 105 F.3d at 509; *see also Su*, 698 F. Supp. 3d at 1178. There is little question that Plaintiff's welfare is at stake, while she continues to sit in limbo and is precluded from career opportunities accessible only to those with lawful permanent resident status. (Dkt. Nos. 11, 15.); *see Islam*, 32 F. Supp. 3d at 1073. However, courts typically find that these factors favor defendants where the hardships a plaintiff faces are "likewise faced by all asylum applications in similar positions." *Su*, 698 F. Supp. 3d at 1178 (quoting *Yan*, 2023 WL at *5). It is also worth noting that, while Plaintiff is worse off than she would be if her application were adjudicated and granted, she is better off

1 than she would be if her application were adjudicated and denied. *See Varol v. Radel*, 420 F.
2 Supp. 3d 1089, 1097 (S.D. Cal. 2019) ("[T]he Court notes Plaintiff continues to reside in the
3 United States pending the processing of her application and is authorized to work pursuant to 8
4 U.S.C. § 1158(d)(2)."). While the Court acknowledges the difficulties faced by Plaintiff, her
5 situation is not distinguishable from cases in which this Court has found these factors to favor
6 Defendants. *See Su*, 698 F. Supp. 3d at 1178 (gathering cases).

### iv. Competing Priorities.

If the Court were to order Defendants to expedite Plaintiff's asylum application, that process would move Plaintiff "to the front of the line at the expense of all other applicants," producing "no net gain." *Id.* (quoting *Varol*, 420 F. Supp. 3d at 1098 and *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). "When expediting an agency's progress on one individual's application would necessarily negatively impact another application, Courts have held that plaintiffs' appropriate recourse is with Congress, not the courts." *Denisov*, 2024 WL at *7 (quoting *Varzaghani v. Mayorkas*, CV 23-1876-DMG (KESx), 2024 WL 2952141, at *4 (C.D. Cal. June 5, 2024)). This factor weighs heavily in favor of Defendants.

### v. Impropriety or Bad Faith.

Plaintiff does not allege any impropriety on the part of Defendants, and the Court has found none. As impropriety is not necessary to a finding of unreasonable delay, *TRAC*, 750 F.2d at 80, this factor is neutral.

\* \* \*

In sum, four factors—including the most important "rule of reason" factor—favor Defendants, and two factors are neutral. The Court is sympathetic to the hardships imposed on Plaintiff due to USCIS's delay in adjudicating her asylum application. However, weighing the *TRAC* factors demonstrates that judicial intervention would be an ineffective response to a problem that is much larger than this plaintiff and this Court. The Court thus DENIES Plaintiff's motion and GRANTS Defendants' motion as to Plaintiff's APA claim.

///

**CONCLUSION**

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants motion for summary judgment as to all claims.

**IT IS SO ORDERED**.

Dated: December 18, 2024



_____
SALLIE KIM
United States Magistrate Judge